UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:14-cv-857-TBR

CARDINAL ALUMINUM COMPANY            PLAINTIFF

v.

CONTINENTAL CASUALTY COMPANY         DEFENDANT

## AMENDED COMPLAINT

COMES NOW, Plaintiff Cardinal Aluminum Company ("Cardinal"), and for its Amended Complaint against Defendant Continental Casualty Company ("Continental") states and alleges as follows:

## INTRODUCTION

1. Plaintiff, Cardinal, purchased Commercial Property Insurance from Defendant, Continental, to protect, *inter alia*, its business, equipment, and inventory. Continental breached the Commercial Property Insurance Policy by failing to tender insurance benefits due to Cardinal. This is an action for breach of contract and bad faith to recover for Continental's failure to satisfy its contractual obligations to insure Cardinal.

## PARTIES AND JURISDICTION

2. Cardinal is a Kentucky corporation having its principal place of business at 6910 Preston Highway, Louisville, Jefferson County, Kentucky 40219.

3. Continental is an Illinois corporation with its principal place of business in Chicago, Cook County, Illinois.

4. This Court has subject matter jurisdiction over this action pursuant to the 28 U.S.C. § 1332(a) because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000) exclusive of interest and costs, and there is complete diversity of citizenship between Cardinal and Continental.

5. This Court has personal jurisdiction over Continental because Continental transacted business in Kentucky, contracted to supply services in this Commonwealth, and contracted to insure Cardinal's business, property, and risks located in this Commonwealth. This action arises from or relates to those transactions and/or contracts.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because this District encompasses the place where the state court action was brought.

## FACTUAL BACKGROUND

7. Cardinal incorporates and restates here the foregoing allegations.

8. Cardinal operates a full-service aluminum alloy production business in Louisville, Kentucky, capable of designing, engineering, extruding, anodizing, powder coating, finishing, fabricating and packaging aluminum alloy products.

9. To insure against potential damage to its business, machinery, and equipment, among other risks, Cardinal purchased a Commercial Property Coverage Policy from Continental, bearing policy number 2082521275, with policy periods from August 1, 2011 to October 1, 2012, and October 1, 2012 to October 1, 2013 (hereinafter referred to as the "Policy").

10. The Policy covered "the interest of [Cardinal] in all . . . personal property owned or used by [Cardinal] . . . including while in course of building, erection, installation, and assembly, and including interest in ***Improvements and Betterments***." (emphasis original).

11. Specifically, Continental agreed to cover damages to "covered equipment" as a result of "equipment breakdown," as each of those terms are defined by the Policy.

12. The Policy defines "covered equipment" as any "equipment built to operate under internal pressure or vacuum other than weight of contents" or "any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power, including production equipment."

13. Furthermore, the Policy defines "breakdown" as the "sudden and accidental breakdown of Covered Equipment or a part thereof which manifests itself at the time of its occurrence by physical damage that necessitates repair or replacement of the Covered Equipment or a part thereof."

14. Pursuant to the Equipment Breakdown Coverage, Continental was required to pay both "[d]irect physical loss to property" and "[t]he loss and expense resulting from the necessary interruption of business" up to $61,545,000.00 under the policy effective from August 1, 2011 to October 1, 2012, and up to $69,562,355.00 under the policy effective from October 1, 2012 to October 1, 2013.

15. In consideration for the insurance coverage, Cardinal agreed to pay, and did pay, to Continental a total premium of $61,880.57 for the policy effective from August 1, 2011 to October 1, 2012, and $66,484.46 for the policy effective from October 1, 2012 to October 1, 2013.

16. In August 2012, Cardinal hired an outside agency to conduct a routine examination of its Sutton 1800-ton Extrusion Press for any cracks.

17. That agency found six cracks on the Extrusion Press's platen-to-main cylinder weld, including one crack that had never before appeared on an examination, measuring 21 inches in length and 1.9 inches in depth.

18. Cardinal had the same agency conduct another examination of its Extrusion Press on January 25, 2013.

19. During that examination, the agency noted the same six cracks that it found in August 2012. Five of those cracks had not changed or had changed minimally.

20. However, the crack first discovered in August 2012 – originally measuring 21 inches in length and 1.9 inches in depth – had spread significantly. As of January 25, 2013, the crack measured 21 inches in length and 2.5 inches in depth.

21. Based on the magnitude of the crack and the rapid rate at which it was spreading, Cardinal determined that the crack threatened the operation of the Extrusion Press.

22. On July 3, 2013, Cardinal reported a claim to Continental seeking insurance coverage to repair the crack on the Extrusion Press.

23. On August 23, 2013, Continental claims specialist Ronald J. Smith ("Smith") notified Cardinal's insurance brokers, Chris Cyterski ("Cyterski") and Jim Krueger ("Krueger"), in a written correspondence that Cardinal's claim was denied.

24. Smith determined that the Extrusion Press was "covered equipment" under the Policy, but that the damage was not the result of a "breakdown" as that term is defined in the Policy. Instead, Smith relied on an engineer's report to find that cracking first occurred in 2009 and spread as a result of normal operations. Therefore, Smith determined that the damage was the result of "wear and tear" and, thus, excluded under the Equipment Breakdown Coverage.

25. On August 27, 2013, Cyterski and Krueger requested that Smith provide them with the engineer's report in order to review and verify the engineer's findings.

26. Smith, however, denied Cyterski and Krueger's requests, citing Continental policy that engineer reports were considered "work product."

27. On October 25, 2013, Cyterski sent Smith an email asking him to reopen Cardinal's claim based on the opinion of an extrusion sales representative, Jim Gates, that the crack discovered in August 2012 appeared suddenly and was not the result of normal wear and tear. Specifically, Gates opined that "it is not normal for the cylinder to develop a large crack in a short period of time as is [Cardinal's] situation." It was Gates' opinion that "there may have been an issue with the press that caused uneven loading on the corners of the cylinder that caused this cylinder to crack quickly." Based on this opinion, Cyterski asked Smith to find that a sudden and accidental occurrence took place, and pay Cardinal's claim.

28. On November 13, 2013, Smith relayed questions from Continental's engineer to Cyterski concerning the basis for Gates' conclusion that the crack at-issue occurred quickly.

29. On March 25, 2014, Cardinal's Chief Financial Officer, Tom Gividen ("Gividen"), responded to Smith's list of questions. Gividen reaffirmed that only one crack created a threat to the operations of the Extrusion Press, and that that crack was first discovered in August 2012. As Gividen explained, "[t]he **magnitude** of this crack at its initial point of identification indicates that it must have occurred as a result of an event outside of normal wear and tear." (emphasis original). Additionally, Gividen offered that the newly-discovered crack was expanding much faster than the other cracks, suggesting it was not due to normal wear and tear.

30. Gividen also attached to his response the opinion from Gates, who opined that "the large crack seemed to have occurred [in] a short period of time which suggests that some influence other than normal operations of the press occurred such as uneven stresses on the main cylinder."

31. At a specific date unknown thereafter, Smith called Cyterski and Krueger and advised them that he had considered a second engineer's report which he felt confirmed the finding that the crack was caused by wear and tear.

32. Cyterski and Krueger requested the second engineer's report from Smith in order to review and verify the engineer's findings. However, Smith denied the request, again citing Continental policy that engineer reports were "work product."

33. On June 18, 2014, Continental formally denied Cardinal's request for coverage reconsideration, again basing its denial on the "wear and tear" exclusion despite the overwhelming evidence to the contrary.

## COUNT I – DECLARATORY JUDGMENT

34. Cardinal incorporates and restates here the foregoing allegations.

35. An actual controversy exists as to whether Cardinal is entitled to recover under the Policy.

36. Specifically, Continental contends that the "wear and tear" exclusion bars Cardinal's claim under the Policy. Continental contends that any damage to Cardinal's Extrusion Press was caused over time due to normal wear and tear, and thus not covered under the Policy.

37. However, as Jim Gates opined, the initial size of the crack at-issue, coupled with the manner in which it rapidly spread, shows that the crack "occurred as a result of an event

outside of normal wear and tear." Therefore, the "wear and tear" exclusion is inapplicable, and Cardinal's claim is covered by the Policy's "Equipment Breakdown" coverage.

38. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Cardinal is entitled to a declaratory judgment that it is entitled to benefits under the Policy based on sudden damage to its Extrusion Press.

## COUNT II - BREACH OF CONTRACT (CONTINENTAL)

39. Cardinal incorporates and restates here the foregoing allegations.

40. Cardinal purchased a Commercial Property Coverage Policy from Continental, with policy periods from August 1, 2011 to October 1, 2012, and October 1, 2012 to October 1, 2013.

41. Cardinal paid good and valuable consideration to Continental in exchange for Continental's agreement to insure, *inter alia*, its equipment.

42. The Commercial Property Coverage Policy or "Policy," as it has been referred to in this Compliant, was therefore a binding and enforceable insurance contract.

43. During the policy period, Cardinal's Sutton 1800-ton Extrusion Press was damaged by a sudden and unexpected crack on its platen-to-main cylinder.

44. Cardinal properly submitted a claim for insurance coverage to Continental under the "Equipment Breakdown" coverage provision of the Policy.

45. Continental wrongfully denied coverage of Cardinal's claim under the "Equipment Breakdown" provision, improperly citing a "wear and tear" exclusion.

46. To date, Continental has neither paid nor settled the claim.

47. By denying coverage, Continental breached the insurance contract.

48. As a proximate cause of Continental's breach, Cardinal is entitled to recover damages in excess of this Court's jurisdictional minimum.

## COUNT III – UNFAIR CLAIMS SETTLEMENT PRACTICE

49. Cardinal incorporates and restates here the foregoing allegations.

50. Continental, by and through its agents, servants, and employees, has violated the Unfair Claims Settlement Practices Act, KRS § 304.12-230, and applicable Kentucky Administrative Regulations by, among other things:

   A. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   B. Failing to adopt and implement reasonable standards for prompt investigations of claims arising under insurance policies;

   C. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   D. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

   E. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

51. Cardinal has suffered damages as a direct and proximate result of Continental's conduct in failing to timely settle Cardinal's claim.

52. Continental's conduct in failing to timely settle Cardinal's claim in good faith where liability is reasonably clear was intentional and/or in reckless disregard to Cardinal's rights, entitling Cardinal to consequential and punitive damages, including pre-judgment interest.

## COUNT IV – COMMON LAW BAD FAITH

53. Cardinal incorporates and restates here the foregoing allegations.

54. Continental, by and through its agents, servants and employees, has acted willfully, arbitrarily and in bad faith in failing to timely investigate and resolve Cardinal's claim

8

arising from sudden and accidental damage to its Extrusion Press, thereby entitling Cardinal to consequential and pre-judgment damages, including pre-judgment interest.

WHEREFORE, Plaintiff Cardinal Aluminum Company, demands:

1. A trial by jury;

2. A declaratory judgment in Cardinal's favor as requested above;

3. Compensatory damages in an amount to be determined by the evidence to be presented at trial;

4. An award of punitive damages in an amount to be determined by the evidence presented at trial;

5. An award of attorneys' fees, costs and expenses expended herein; and

6. Any and all other legal or equitable relief to which Cardinal is entitled.

Respectfully submitted,

FULTZ MADDOX HOVIOUS & DICKENS PLC
R. Gregg Hovious

/s/ R. Gregg Hovious
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
(502) 588-2000

*Counsel for Plaintiff, Cardinal Aluminum Company*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on December 12, 2014, a copy of the foregoing was electronically filed through the ECF system, and has been furnished by U.S. Mail to the following:

Mindy G. Barfield
Rebecca M. Wichard
Dinsmore & Shohl LLP
Lexington Financial Center
250 West Main Street
Suite 1400
Lexington, Kentucky 40507
*Attorney for Defendant Continental Casualty Company*

                /s/ R. Gregg Hovious
                *Counsel for Plaintiff*