UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:14-CV-857-TBR-LLK

CARDINAL ALUMINUM COMPANY                                    PLAINTIFF

v.

CONTINENTAL CASUALTY COMPANY                                 DEFENDANT

**OPINION AND ORDER**

Defendant filed a notice to subpoena documents from a non-party. (Docket # 16). Plaintiff moved to quash the proposed subpoena on privilege and relevance grounds. (Docket # 17). The parties fully briefed the motion. The issue is now ripe for the Court's review.

The Court treats Plaintiff's motion as a motion for protective order and grants the motion in part and denies it in part. The Court finds that the proposed subpoena exceeds the scope of discovery, based on the subject matter of the case and the current procedural posture, and that Plaintiff did not meet its burden to demonstrate that the subpoena seeks privileged documents. Defendant may seek limited discovery from the non-party. Plaintiff may assert privilege over specific documents the non-party otherwise intends to produce to Defendant.

**Background**

Plaintiff filed its complaint in Jefferson Circuit Court alleging claims for breach of contract, violation of Kentucky's Unfair Claims Settlement Practices Act, and common-law bad faith as well as seeking declaratory relief. (Docket # 1-5). The claims asserted insurance coverage for a crack that formed in a large piece of industrial equipment. *Id.* Defendant[1]

---

[1] Initially, CNA Insurance Company was a co-defendant in this case. Plaintiff voluntarily dismissed its claims against the co-defendant three days after the removal. (Docket # 5).

removed the case to federal court on diversity of jurisdiction grounds. (Docket # 1). Plaintiff amended its complaint and Defendant answered shortly after the removal. (Docket ## 6, 7).

District Judge Russell issued a Scheduling Order that bifurcated the bad-faith claims and set a fact-discovery deadline of July 1, 2015, which was later extended to July 15, 2015. (Docket ## 12, 21). On May 15, 2015, Defendant filed and served its Notice of Issuance of Subpoena *Duces Tecum* on Arthur J. Gallagher & Co., Plaintiff's insurance broker for the policy concerned in this litigation. (Docket # 16). The proposed subpoena seeks: all documents related to the insurance policy involved in the litigation; all opinions, reports, and examinations related to equipment owned or operated by Plaintiff; and, all documents related to the instant case.

Plaintiff objected to the proposed subpoena *duces tecum* and filed its Cardinal Aluminum Company's Motion to Quash Subpoena Duces Tecum on May 27, 2015. (Docket # 17). Plaintiff objected on the grounds of attorney-client privilege, the work-product doctrine, and relevance. *Id.* After a telephonic status conference with the Magistrate Judge, the Court granted Plaintiff retroactive leave to file its motion. (Docket # 20). Defendant responded to the motion and Plaintiff filed its reply brief. (Docket ## 22, 27). The matter is now ripe.

**Nature of the Motion**

Plaintiff filed its motion as a motion to quash. (Docket # 17). The proposed subpoena commands a non-party located in Frankfort, Kentucky, to produce documents at the offices of Defendant's counsel in Lexington, Kentucky. (Docket # 16-1). Both Frankfort and Lexington are located in the Eastern District of Kentucky. A motion to quash is properly made to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3). That court is the Eastern District of Kentucky, not this Court. *See* Fed. R. Civ. P. 45(c)(2) (describing the place of

compliance). A court may transfer a motion to quash to the issuing court under certain circumstances not met for the instant motion. Fed. R. Civ. P. 45(f).

Other courts have held that a party lacks standing to challenge a subpoena served on a non-party absent the implication of a personal right or privilege related to the documents sought by subpoena. *See e.g.*, *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 2:04-CV-01199-DAE-GWF, 2007 WL 119148, at * 3 (D. Nev. Jan. 9, 2007). That a party lacks standing to assert a relevance objection when seeking to quash a subpoena to a non-party follows as a conclusion of this rule. *See id.*

For these reasons, the Court will treat Plaintiff's motion as a motion for protective order under Rule 26. *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005) (treating a party's motion to quash as a motion for protective order and evaluating the motion under Rule 26 because the party could not have the relief she sought under Rule 45).

**Privileges**

I. Attorney-Client Privilege

Plaintiff asserted that attorney-client privilege protects the documents sought by Defendant's subpoena. (Docket # 17-1, p. 4). Privileged documents fall outside the scope of discovery. Fed. R. Civ. P. 26(b)(1). The burden of establishing that a privilege exists to shield a document from discovery rests on the party asserting privilege—Plaintiff for the instant motion. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983); *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012).

Plaintiff pled four counts in the instant case: breach of contract, violation of the Kentucky Unfair Claims Settlement Practices Act, common-law bad faith, and declaratory relief. (Docket #

6).[2] For questions of attorney-client privilege, the Court must apply state law if "state law supplies the rule of decision" for the claim. Fed. R. Evid. 501. State law applies the rules of decision for all of the claims in the instant case.[3] Therefore, this Court must apply Kentucky law regarding attorney-client privilege. *Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990) ("In a civil case involving claims based on state law, the existence of a privilege is to be determined in accordance with state, not federal, law.").

Rule 503 of the Kentucky Rules of Evidence establishes attorney-client privilege for claims under Kentucky law. *Haney v. Yates*, 40 S.W.3d 352, 354 (Ky. 2000). The Supreme Court of Kentucky recognized "three salient principals" regarding attorney-client privilege: broad discovery exists for non-privileged matters,[4] "the party asserting a privilege must prove its applicability," and the courts should strictly construe privileges because they constrain the public's right to evidence. *Id.* at 355.

"For the privilege to attach, the statement must be a confidential communication made to facilitate the client in his [or] her legal dilemma and made between two of the four parties listed in the rule: the client, the client's representatives, the lawyer, or the lawyer's representatives." *Id.* at 354. The parties did not argue that Plaintiff's insurance broker qualifies the client, lawyer, or lawyer's representative. (Docket # 27, p. 4). They confined the argument to whether the broker

---

[2] While Plaintiff initially pled declaratory relief pursuant to Kentucky law, in its Amended Complaint, Plaintiff pled a count for declaratory relief pursuant to 28 U.S.C. § 2201. (*Compare* Docket # 1-5, p. 7, *with* Docket # 6, pp. 6-7). Nonetheless, federal courts treat a removed declaratory judgment action "as though it had been filed under the federal declaratory judgment act." *Krauser v. BioHorizons, Inc.*, 903 F. Supp. 2d 1337, 1346 n.6 (S.D. Fla. 2012).

[3] The Declaratory Judgment Act serves as a procedural device, not a grant of subject-matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *see also* 903 F. Supp. 2d at 1346 n.6. That is, the act creates a remedy, not a federal question. *See* 339 U.S. at 671. Because Plaintiff seeks a declaration related to its rights under the contract, Kentucky contract law supplies the rule of decision.

[4] Rule 26 provides the same result in the federal forum. Fed. R. Civ. P. 26(b)(1).

qualifies as a representative of Plaintiff and if the communications were confidential and "made for the purpose of facilitating the rendition of legal services." (Docket # 17-1, p. 4-6; # 22, pp. 6-7; # 27, p. 4); *see also* Ky. R. Evid. 503.

Broadly, Plaintiff argued that its insurance broker, the target to the subpoena under review, "shepherd[ed] [it] through the claims process." (Docket # 17-1, p. 6). Plaintiff specifically asserted that the broker served as its agent to secure coverage, including negotiating the policy, and "assured that [its] legal interests would be protected." *Id.* Moreover, Plaintiff asserted that the broker answered its coverage and claims questions, advocated Plaintiff's claim to Defendant, and provided advice about legal claims against Defendant. *Id.*

Plaintiff's chief financial officer submitted an affidavit related to this motion. (Docket # 17-2). In that affidavit, the CFO testified that Plaintiff "asked [its broker] to submit a claim to [Defendant] seeking coverage for the cost to repair the machine." *Id.* at para. 6. Moreover, the broker negotiated on Plaintiff's behalf and advised Plaintiff concerning the claims process. *Id.* at para. 7. These specific actions do not amount to legal advice. Had an officer or employee of Plaintiff done the same, the internal communications of Plaintiff would not become privileged from discovery. The privilege only applies to communications seeking legal advice, not business advice. *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 60 (Ky. 2002). The Supreme Court of Kentucky held that, in contrast to the "uniquely personal nature" of the attorney-client relationship, the "broker-insured relationship . . . arises simply from a commercial transaction for the sale of insurance." *Assoc'd Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 63 (Ky. 2010).

The Court finds that Plaintiff's arguments failed to meet its burden of demonstrating the existence of an attorney-client privilege protecting all of the documents sought by the subpoena. For example, based on Plaintiff's argument and affidavit, the broker's communications regarding

5

the negotiation of the policy were not undertaken to obtain legal advice, but rather to secure insurance coverage. Plaintiff did not argue that its broker acted to effectuate legal representation for Plaintiff. Ky. R. Evid. 503(a)(2)(B)(iii). Based on the record before it, the Court cannot determine that the broker qualifies as a representative of Plaintiff for the purposes of Rule 503 for each or any document sought by the subpoena. Moreover, the Court cannot determine that all the documents sought constitute communications, let alone confidential communications made to facilitate professional legal services. Because Plaintiff failed to meet its burden, the Court must deny the motion as it relates to attorney-client privilege.

> II. Work-Product Doctrine

Federal law applies to determine the application of work-product–doctrine protections. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). As with attorney-client privilege, the party seeking protection bears the burden of proving the documents constitute work product. *Id.* at 473. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).

Plaintiff's argument admitted that not all documents sought from the broker constitute work product. (Docket # 17-1, p. 7). Plaintiff did argue that the date Defendant advised the broker that Defendant denied Plaintiff's claim[5] should serve as a bright-line division and all documents concerning the claim prepared after that date come within the doctrine's protection.

---

[5] The Court notes that the parties disagreed in their briefing as to the date of this event, but the Court need not settle that dispute to resolve the instant motion. (Docket # 27, p. 5-6). *Compare* (Docket # 17-1, p. 7) (August 23, 2013), *with* (Docket # 22, p. 9) (June 18, 2014).

*Id.* Plaintiff broadly argues that "[a]ny documents concerning [Plaintiff's] claim that were prepared after that date were prepared in anticipation of litigation." *Id.*

The Court finds that Plaintiff did not met its burden of establishing that the broad classes of documents sought by the subpoena were prepared in anticipation of litigation or for trial, even if considering only those after the date of coverage denial. "[T]he theoretical anticipation of litigation does not transform every subsequent document into work product." *Darby v. Gordon Food Servs., Inc.*, No. 3:11-CV-646-S, 2013 WL 5354208, at *3 (W.D. Ky. Sept. 24, 2013). Documents prepared as a part of the ordinary business functions of an insurance broker are not prepared as a result of anticipated litigation. *See id.*; *see also Black & Veatch Corp. v. Aspens Ins. (UK) Ltd.*, 297 F.R.D. 611, 619 (D. Kan. 2014) (finding that an insurance broker does not automatically and always act as the insured's representative within the term's meaning for Rule 26(b)(3)). Plaintiff failed to demonstrate that all documents prepared after the date of denial of coverage were prepared "'because of' anticipated litigation" and therefore failed to carry its burden of demonstrating that the work-product doctrine protects the documents sought by Defendant. *See Darby*, 2013 WL 5354208, at *3; *see also Bloodstock Servs. Ir., Ltd. v. United States*, 87 F.R.D. 732, 735 (E.D. Ky. 1980) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 61 F.R.D. 127, 130 (D.S.C. 1973)) (holding that a mere "'likelihood of bringing about litigation at some point in the future is not a sufficient showing. The probability [of particularized litigation] must be substantial and the commencement of litigation must be imminent.'").

III. Conclusions as to privileges

The Court finds that Plaintiff failed to meet its burden of establishing any privilege protects any class of documents sought by the subpoena. Nonetheless, the Court recognizes that a privilege may protect some documents sought. While the Court cannot rule on the abstract

7

question of if an insurance broker can ever serve as a client's representative for the purpose of Kentucky's attorney-client privilege, it also recognizes that the privilege has been called, "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). For that reason, the Court recognizes that Plaintiff must have some mechanism to assert specific claims of privilege concerning specific documents, which it cannot do if a non-party possesses the document.

Without a privilege log before it, the Court cannot adequately address asserted privileges that rely only on abstract theories related to the relationship between Plaintiff and its insurance broker. Rule 501 promotes the determination of privilege on a case-by-case basis rather than a wholesale determination that all insurance-broker–client communications either are or are not protected by the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 396-97 (1981); Fed. R. Evid. 501 notes on committee on the Judiciary, S. Rep. No. 93-1277, *as reprinted in* 1974 U.S.C.C.A.N. 7051, 7059.

The Court possesses broad discretion to regulate discovery and must exercise that discretion to balance the needs and rights of all parties. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 406 (5th Cir. 1983)). Because privilege may protect some of the documents sought, the Court will allow Plaintiff the opportunity to review the responsive documents its broker will otherwise produce to Defendant and develop a privilege log consistent with this opinion. In that way, any specific claims of privilege may be litigated with a more thoroughly developed factual record without further delaying the production of other records.

**Relevance**

Plaintiff argued that Defendant's subpoena is overly broad, both in relation to the subject matter of the litigation and the procedural posture of the case. (Docket # 17-1, pp. 7-9). The Court will address each issue in turn.

I. The Subpoena Seeks Irrelevant Documents

For the purposes of discovery, relevance includes evidence admissible at trial and information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Plaintiff argued that Defendant's request for "[a]ll opinions, reports, [and] examinations related to equipment owned [or] operated by" Plaintiff is overly broad. (Docket # 17-1, pp. 7-8). This litigation concerns insurance coverage for a specific piece of machinery (a Sutton 1800-ton extrusion press) based on a narrow question (if the damage to the machine constituted normal wear and tear, which the policy excluded from coverage). *See* (Docket # 6). Defendant argued in response by simply stating that the documents related to all machines "are relevant and not otherwise 'unreasonable, oppressive, annoying, or embarrassing.'" (Docket # 22, p. 5).

The Court agrees that item number two of Defendant's proposed subpoena seeks information that is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence. The Court will limit item two of Defendant's subpoena to documents related to the Sutton 1800-ton extrusion press for which Defendant denied coverage.

II. The Subpoena Seeks Documents beyond the Scope of the Current Discovery Phase

The Court bifurcated this action, leaving the issues of bad faith for litigation after the coverage issues. (Docket # 12). Plaintiff argued that Defendant's subpoena seeks documents relevant, if at all, only to the bad-faith claims. (Docket # 17-1, p. 8). Defendant responded that

9

the documents "would evidence [Plaintiff's] understanding of the" insurance policy, knowledge and investigation of the crack prior to reporting, and efforts to provide information to Defendant after making its claim. (Docket # 22, p. 5). Plaintiff responded that Defendant previously argued when requesting a protective order that Plaintiff not have other discovery at this stage of the litigation. (Docket # 27, p. 2).

This Court already addressed discovery in light of the bifurcation based on Defendant's prior motion to compel. (*See* Docket # 26). The Court exercised its "broad discretion and inherent power to stay discovery until preliminary questions that dispose of the case are determined." *Id.* (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). The Court will impose the same restriction on Defendant's discovery. Defendant must confine its discovery, at this time, to the question of coverage, excepting discovery that assumes the insurance contract ambiguous. As such documents related to Plaintiff's understanding of the policy and efforts to provide information to Defendant fall outside of the presently allowable discovery. Facts related to the Plaintiff's knowledge and investigation of the crack in the press may have relevance to the coverage question.

### III. Conclusions as to Relevance

The Court concludes that Defendant's request for documents related to all machines is overly broad. Defendant may seek documents related to the Sutton 1800-ton extrusion press. While the Court finds press-related–documents relevant and any-machine–related documents overly broad, some request between those two endpoints may be reasonably calculated to lead to the discovery of admissible evidence. The Court finds only that the currently presented subpoena's request number two exceeds the scope of discovery.

Likewise, the Court finds that the other subpoena requests exceed the currently allowed scope of discovery, based on the procedural posture. Both parties must limit their discovery at this stage in the litigation to evidence reasonably calculated to lead to the discovery of admissible evidence related to the coverage issue, excluding any evidence related to an ambiguous contract, which the Court previously stayed. (Docket # 26).

## ORDER

IT IS HEREBY ORDERED that the Court evaluated Plaintiff's Cardinal Aluminum Company's Motion to Quash Subpoena Duces Tecum as a motion for protective order. The Court grants in part and denies in part the motion. (Docket # 17). The Court restricts the currently presented request two of Defendants proposed subpoena to documents related to the Sutton 1800-ton extrusion press, but grants Defendant leave to modify its request. The Court finds requests one and three overly broad and prohibits Defendant to issue a subpoena containing those requests. The Court grants Defendant leave to amend requests one and three to seek only documents related to the coverage dispute, excluding questions only relevant assuming the insurance contract is ambiguous. The Court grants Defendant leave to issue a subpoena to Arthur J. Gallager & Co. after the fact-discovery deadline, but no later than 14 days after this order and only after notice as required by Rule 45.

IT IS FURTHER ORDERED that the subpoena will allow Plaintiff a seven-day inspection period for all documents the non-party will produce in response to the subpoena before the non-party provides the documents to Defendant. Plaintiff may assert privilege over any of the documents to otherwise be produced by producing a privilege log to Defendant and the non-party. The non-party will produce the documents not entered on a privilege log by Plaintiff after the expiration of the seven-day inspection period. If Defendant disputes any

asserted privileges, it will contact the Court to schedule a teleconference so that the Court can establish an expedited briefing schedule.

c:       Counsel